## The First Ecclesiastical Society of New Britain *vs.* Lyman W. Besse.

First Judicial District, Hartford, January Term, 1923.
Wheeler, C. J., Beach, Curtis, Burpee and Keeler, Js.

A stipulation to refer questions of amount, quality, value or price, which might arise during or after the performance of the main contract, to the decision of persons thereafter to be selected, is said to be an agreement merely for appraisement or estimate, rather than for arbitration, which is a method of settling already-existing controversies. Such a stipulation is not the substance or gist of the contract, but merely an incident, and, while valid, is not binding and irrevocable so long as it remains executory; nor does it constitute a defense to a suit on the contract by the party who has failed to carry out the stipulation for reference, unless the contract provides that it shall have such effect.

In all cases where there is, first, a covenant to pay, and, secondly, a covenant to refer to fix the amount to be paid, the covenants are distinct and separable, and suit may be brought on the first, leaving the defendant to his damages on the second, unless, either expressly or by necessary implication, the reference and award is made a condition precedent to suit.

A necessary implication is one which is quite as obvious from the terms of the contract as if expressed in words.

The defendant covenanted to pay the plaintiff, upon an exchange of lands—which was made—an amount to be the subject of future agreement, or, if the parties could not agree, to be fixed by others, one to be chosen by each of the parties and the third by the other two, whose award was to be final. The parties could not agree, nor could the two persons chosen agree upon the choice of the third, and nothing further was done. *Held*, upon a demurrer to the complaint, that notwithstanding the lack of an award, the plaintiff might maintain an action to recover the excess in value of the property conveyed by it to the defendant over that received from him.

The defendant also claimed that the complaint disclosed a failure by the plaintiff to make a fair effort, in good faith, to procure the award. *Held* that the allegations of the complaint afforded no basis for such an inference, inasmuch as the plaintiff having duly selected one appraiser was not bound, either by the contract or by law, to make a second selection a year and a half after the exchange of the properties had been completed.

A defense that proceedings for arbitration had failed because of the plaintiff's bad faith or failure to act, is one that must be set up in an answer.

Argued January 9th—decided March 8th, 1923.

ACTION to recover the reasonable value of land and rights conveyed by the plaintiff to the defendant, in excess of the reasonable value of land and rights conveyed by the defendant to the plaintiff, brought to and tried by the Superior Court in Hartford County, *Hinman, J.*, upon a demurrer to the complaint; the court sustained the demurrer and rendered judgment for the defendant, and the plaintiff appealed. *Error and cause remanded.*

The complaint sets forth that in February, 1920, the plaintiff and defendant entered into a contract for the exchange of certain land and rights by conveyance from each to the other, as fully appears in the contract, of which a copy is made part of the complaint as Exhibit A; and that on April 29th, 1920, for the purpose of carrying out this contract, the plaintiff and defendant entered into a certain indenture conveying from each to the other the lands and rights referred to in this contract; and a copy of this indenture is made a part of the complaint as Exhibit B. The complaint continues: "4. In and by the terms of said contract Exhibit A it was provided that for the exchange of said property and rights the plaintiff should pay no money but that the amount of money to be paid to the plaintiff by the defendant for said exchange of land and rights, if any, should be the subject of future agreement, and said contract further provided: 'If the parties thereto cannot agree within ninety days from the date of said conveyance upon the price, if any, to be so paid by said Besse to said First Ecclesiastical Society, then the same shall be left forthwith to arbitration, and if the parties thereto cannot agree upon one arbi-

trator, then each party shall select an arbitrator, and the two arbitrators so chosen shall select the third arbitrator, and the one arbitrator or the three arbitrators so chosen shall hear and determine the question of the amount, if any, by which said property of said Besse is benefited by said transaction over and above the amount of damage or detriment to said property of said Besse, and make an award thereon, and that the parties agree to be bound by whatever award said arbitrator or arbitrators make and that from said award there shall be no appeal.' 5. The plaintiff and the defendant were unable to agree within ninety days from the date of said conveyances upon the price, if any, to be paid by the defendant to the plaintiff, and although the parties hereto have repeatedly attempted to agree upon said price, they have utterly failed to agree upon the same. 6. Pursuant to the terms of said contract Exhibit A, on or about the          day of          , the parties being unable to agree upon one arbitrator, the plaintiff selected and appointed E. Allen Moore an arbitrator and the defendant selected and appointed D. E. Burbank an arbitrator, and thereafter said Moore and said Burbank attempted to select a third arbitrator but although said Moore and Burbank have repeatedly endeavored to agree upon the selection of such third arbitrator they have at all times failed to agree upon any person as such third arbitrator and have failed to select such third arbitrator. Said Moore and Burbank having failed to agree upon the selection of such third arbitrator, said Moore on or about the          day of December, 1921, resigned as such arbitrator and the plaintiff and defendant are in hopeless disagreement as to the price to be paid by the defendant to the plaintiff for said exchange of land and rights. 7. The reasonable value of the land and rights so conveyed to the defendant by the plain-

tiff in excess of the reasonable value of the land and rights so conveyed by the defendant to the plaintiff is $15,000, and the amount by which said property of the defendant is benefited by said transaction over and above the amount of damage or detriment to said property of the defendant is $15,000."

The complaint is dated August 2d, 1922. The demurrer, filed October 31st, 1922, sets up that it appears by the complaint that this action was prematurely brought because (1) the agreement for arbitration was an integral and essential part of the contract for exchange of properties, and is still unperformed by the plaintiff; (2) until so performed there was no controversy between the parties justifying a resort to a court of justice; (3) that the failure of the arbitrators to agree upon an umpire did not break or terminate the agreement for fixing by arbitration the amount due or to become due to the plaintiff; (4) that upon the resignation of the plaintiff's arbitrator, it was its duty, under the contract, to name another, which it has not done. This demurrer was sustained and from this action and the consequent judgment for the defendant, the plaintiff appealed.

*John T. Robinson,* for the appellant (plaintiff).

*Arthur L. Shipman,* for the appellee (defendant).

BURPEE, J. It was plainly the intention of the parties to the contract set up in the complaint, that the exchange of lands and rights by conveyance from one to the other should be made under specified conditions. One of these conditions was that the defendant would pay to the plaintiff for the exchange of property the amount of money, if any, which should be agreed upon by them within ninety days after the conveyance

had been made, and if they could not agree upon this price within that time, they should select arbitrators to determine the question of the amount, if any, of benefits above damages accruing to the defendant's property by the transaction, and to make a binding award thereon.

This court said, in *Hall* v. *Norwalk Fire Ins. Co.*, 57 Conn. 105, 114, 17 Atl. 356, that "it has always been held, both by the courts of England and of the United States, that arbitrations to settle particular questions which are auxiliary to the jurisdiction of courts, such as the amount of damages, or the amount of the loss by fire under policies of insurance, are binding in law, and indeed highly favored by courts." In many cases it appears that the agreements were designed to leave to the decisions of persons to be selected, questions of amount, quality, value or price which might come up during or after the performance of the contract. Of these it has been said that a reference agreed on for such a purpose is not an arbitration in the accepted legal sense of the word, because an arbitration is a method adopted to settle already-existing controversies, and a reference of this kind is intended to affect only possible future controversies; and that the latter, accurately speaking, is an appraisement or estimate. *Fisher* v. *Merchants Ins. Co.*, 95 Me. 486, 50 Atl. 282; *Noble* v. *Grandin*, 125 Mich. 383, 84 N. W. 465; *Toledo S. S. Co.* v. *Zenith Transportation Co.*, 106 C. C. A. 501, 184 Fed. 391; *Collins* v. *Collins*, 26 Beav. 306, 28 L. J. Eq. N. S. 184; *Parsons* v. *Ambos*, 121 Ga. 98, 48 S. E. 396; *Palmer* v. *Clark*, 106 Mass. 373; *Stout* v. *Phœnix Assur. Co.*, 65 N. J. Eq. 566, 56 Atl. 691. But it is undisputed, as these cases demonstrate, that a stipulation to submit such matters of future disagreement in a manner specified, by whatever name it may be called, is not of the substance of the contract, but is

merely an incident included in the contract to determine auxiliary, collateral, incidental, or ministerial questions which are considered as possible or likely to arise. Moreover, it has been generally held that while such an agreement is valid, it is not binding and irrevocable as long as it remains executory and has not been carried through to an award or decision. *Reed* v. *Washington F. & M. Co.*, 138 Mass. 572; *Hartford Fire Ins. Co.* v. *Bourbon County Court*, 115 Ky. 109, 72 S. W. 739; *Welch* v. *Miller*, 70 Vt. 108, 39 Atl. 749; *Hobart* v. *Drogan*, 35 U. S. (10 Pet.) 108, 9 L. Ed. 363; *The Excelsior*, 123 U. S. 40, 8 Sup. Ct. 33, 31 L. Ed. 75; *Hamilion* v. *Home Ins. Co.*, 137 U. S. 370, 385, 11 Sup. Ct. 133.

It seems also to be settled by the courts of the United States and Great Britain that an agreement to refer to third persons, to be chosen in the future, the decision of an anticipated disagreement relating to such questions, is not a defense to legal proceedings instituted by a party to the agreement who has ignored or revoked it, or failed to carry it out, unless the contract provides that it shall have such effect; but the courts will take jurisdiction and adjudicate the controversy just as if no such agreement had been made. As instances of such decisions, see cases above cited; also, *Perry* v. *Cobb*, 88 Me. 435, 34 Atl. 278; *Holmes* v. *Richet*, 56 Cal. 307; *Frink* v. *Ryan*, 4 Ill. 322; *Gasser* v. *Sun Fire Office*, 42 Minn. 315, 44 N. W. 252; and others collected in note in 47 L. R. A. (N. S.) 358.

In the present suit, the complaint sets up a contract for the exchange of property. That was the subject and object of the contract, and it has been performed. For this exchange, the defendant agreed to pay to the plaintiff an amount of money which should be equivalent to the benefit he should receive from the transaction. That amount was not stated, but was

left to be agreed on within a limited time after the contract had been carried out. Then, in anticipation of a failure to agree within that time, the parties made a stipulation to select arbitrators to fix the price to be paid by a prescribed method and to make a binding award. The arbitrators were accordingly selected, but have not made an award. Here, then, is set out an agreement distinct and collateral to an executed contract and relating merely to an incidental and auxiliary question, and this agreement has not been carried into effect. In all cases "where there is, first, a covenant to pay, and, secondly, a covenant to refer, the covenants are distinct and collateral, and the plaintiff may sue on the first, leaving the defendant . . . to bring an action for not referring," or to seek a remedy under statute. *Dawson* v. *Fitzgerald*, L. R. 1 Ex. D. 257, 260, 24 Week. Rep. 773. This statement of the rule of law is quoted with approval in *Hamilton* v. *Home Ins. Co.*, 137 U. S. 370, 11 Sup. Ct. 133. See, too, *Connors* v. *United States*, 130 Fed. Rep. 609; *Seward* v. *Rochester*, 109 N. Y. 164, 16 N. E. 348; *Reed* v. *Washington F. & M. Co.*, 138 Mass. 572; *Anderson* v. *Odd Fellows' Hall*, 86 N. J. L. 271, 273, 90 Atl. 1007; *Birmingham Fire Ins. Co.* v. *Pulver*, 126 Ills. 329, 338, 81 N. E. 804.

It is manifest that, standing alone, this agreement in the contract before us could not be set up by itself as a bar to this suit. It must be kept in mind that this agreement in this contract stands alone. For this contract contains no express provision that no suit shall be brought unless and until there has been an arbitration and award, or that no action shall be brought except for a sum fixed by arbitration and award, or that defers the right to sue, or that performance of or compliance with the stipulation for arbitration shall be a condition precedent to a suit. In this respect it differs materially

from the contract which this court had under con-
sideration in the case of *Bernhard* v. *Rochester German
Ins. Co.*, 79 Conn. 388, 65 Atl. 134, wherein it was held
that the obligations of the parties were fixed by an
express concurrent stipulation that the arbitration
and award should be a condition precedent to a suit.
In the absence of such an express provision, however,
it is unquestionably the law that a provision for arbitra-
tion may be construed to be a condition precedent to
suit by implication. But that implication must be so
plain that a contrary intention cannot be supposed
nor any other inference made. It must be a necessary
implication. 5 Corpus Juris, 45. "A necessary im-
plication is always quite as obvious from the terms
of the contract as if the words expressed it in fact."
*Green* v. *American Cotton Co.*, 112 Fed. Rep. 743, 744.
A contract which is relied upon to deny, restrain, limit
or put conditions on, the right to appeal to the courts,
will be strictly construed; language must be interpreted
according to the rules and principles of the law respect-
ing the subject, as they have been laid down and ex-
plained in such decisions of the courts as those to which
we have referred; and its terms will not be extended
by any construction or inference that can reasonably
be escaped. *Western Assur. Co.* v. *Decker*, 39 C. C. A.
383, 98 Fed. 381; *Smith* v. *Preferred Masonic Mutual
Acc. Asso.*, 51 Fed. Rep. 520; *Adams* v. *Haigler*, 123
Ga. 659, 51 S. E. 638; and the omission of conditions,
restrictions, or qualifications may be most significant.

Observing these accepted principles in examining the
contract set up in the complaint in this suit, we find
"first, a covenant to pay, and, secondly, a covenant
to refer," to use the words of the Master of the Rolls
in *Dawson* v. *Fitzgerald*, L. R. 1 Ex. D. 257, 260. These
covenants "are distinct and collateral." *Idem.* By
the first, the defendant became bound to pay an amount

of money for the exchange of lands and rights particularly described. What the amount would be was to be determined by agreement of the parties after the contract had been performed, or if such an agreement could not be reached in ninety days, by arbitrators to be selected to determine the amount in a specified manner. The "covenant to pay" is absolute. Nothing is left except the auxiliary question of amount or price, and that is the subject of the collateral "covenant to refer." This stipulation is like those which have been considered in many of the cases above mentioned, and which have almost uniformly been held not be to conditions precedent. Compare also *Cavanaugh* v. *Dooley*, 88 Mass. 66; *Grosvenor* v. *Flint*, 20 R. I. 21, 37 Atl. 304; *Read & Traversy* v. *State Ins. Co.*, 103 Iowa, 307, 72 N. W. 665; *Crossley* v. *Connecticut Fire Ins. Co.*, 27 Fed. Rep. 30. We do not discover anything peculiar in this stipulation which would suggest that it should be considered differently. There is no apparent indication of an intention that the defendant's liability was to be dependent upon an award. On the contrary, it appears that his liability to pay was fixed upon him by the performance of the contract of exchange, when he received and began to enjoy the benefits of the transaction. If the contract had provided merely that the defendant should pay a price to be agreed on within ninety days after he took possession of the lands and rights, it might fairly be implied that the plaintiff must wait ninety days for its pay, and then might sue for the amount agreed on, or in case of failure to agree within that time, might forthwith sue to recover whatever the benefits were reasonably worth. But we find no reason for a necessary or reasonable implication that the plaintiff is bound to wait until the arbitrators had made an award. If this stipulation should be construed to be a condition precedent to an action

by the plaintiff, it would be at the mercy of the defendant or of any of the three arbitrators who might be chosen; for any one of them, for either good or bad reasons, may block the proceedings indefinitely, while the defendant will continue to enjoy the benefits of the transaction. We think that we have here merely a subsidiary contract for fixing a price by reference or arbitration, which is not a bar to this action by necessary or reasonable implication. The defendant admits that more than two years and a half before this suit was brought he received the plaintiff's lands and rights, and that he agreed to pay for them soon after they were delivered, and also that the reasonable value of those lands and rights is $15,000. Evidently justice may be done speedily by allowing this suit to take its course. The trial court erred in sustaining the demurrer on the ground that the resort to arbitration should be construed by implication as a condition precedent.

The trial court also erred in assuming to decide as a matter of law that the conduct of the plaintiff does "not measure up to the required standard of fair effort, in good faith, . . . to procure a determination of the controversy in the manner contemplated by the contract." We do not think that the facts alleged in the complaint and admitted by the demurrer disclose any failure of the plaintiff to make a fair effort or to act in good faith. It appears that the contract obliged it simply to "select an arbitrator." That it has done. By no terms in the contract is it to be held responsible for the actions of the arbitrator selected by it, and much less for the conduct of the arbitrator chosen by the defendant. It is set forth that the two arbitrators selected failed to agree upon a third person to act with them as arbitrator, but no reason for their failure is stated. It appears that about a year and a half after the exchange of property had been completed, the

arbitrator selected by the plaintiff resigned because of this failure to agree; but no reason for this failure is given. There is no averment in the complaint, and no allegation from which it may reasonably be inferred, that the failure was due to any misconduct or bad faith of the plaintiff. In fact, no fault nor bad faith nor misconduct on the part of anyone is suggested. The complaint is silent about the actions of the parties after the plaintiff's arbitrator resigned, and it may be fairly inferred that it did not select another, but whether for good or bad reasons we may not speculate. Certainly the contract does not call on it to make a second selection, nor does the law. *Jerrils* v. *German American Ins. Co.*, 82 Kan. 320, 108 Pac. 114; *Spring Garden Ins. Co.* v. *Amusement Syndicate Co.*, 102 C. C. A. 29, 178 Fed. 519; *Lancashire Ins. Co.* v. *Lyon*, 124 Ill. App. 491; *Western Assur. Co.* v. *Decker*, 39 C. C. A. 383, 98 Fed. 381. The complaint contains no averment from which we may reasonably draw the inference that there has been any lack of fair effort or good faith on the part of anyone, or which lays a basis for the reason, stated in the demurrer, that it was the plaintiff's "duty, under the agreement, to name another" person as arbitrator. *Pearl* v. *Harris*, 121 Mass. 390, 393; *Franklin* v. *New Hampshire Fire Ins. Co.*, 70 N. H. 251, 47 Atl. 91. If the defendant wished to raise the defense that the proceedings for arbitration had failed because of the plaintiff's bad faith or failure to act further, he should have set it up in an answer. *Carp* v. *Queen Ins. Co.*, 104 Mo. App. 502, 79 S. W. 757; *Bergman & Co.* v. *Commercial Union Ins. Co.*, 12 Ky. L. Rep. 942. The complaint, in language which should be liberally construed to give effect to the pleading according to the theory upon which it proceeded and to do substantial justice between the parties (*Price* v. *Bouteiller*, 79 Conn. 255, 257, 64 Atl. 227), sets out a substantial compliance

by the plaintiff with the requirements imposed upon it by the stipulation for arbitration. If it is claimed that there are facts consistent with these statements which show, notwithstanding, that the plaintiff has no cause of action, they should be alleged specially in an answer. Practice Book, 1922, § 200, p. 290.

There is error and the cause is remanded to be proceeded with according to law.

In this opinion the other judges concurred.